THE SINGER MANUFACTURING COMPANY, plaintiff in error, vs. THE DOMESTIC SEWING MACHINE COMPANY et al., defendants in error.

When the agents of two sewing machine companies were competitors before the Georgia State Agricultural Society for the premium for the best machine, the successful party who secures the premium is not entitled to an injunction to restrain the other from publishing in a newspaper that he, and not the other, received the premium. Courts of equity will not restrain the publication of a libel, nor use the writ of injunction to prevent parties from publishing untruths respecting their wares when there is no infringment of a property right.

Injunction. Equity. Libel. Before Judge HOPKINS. Fulton county. At Chambers. December 24th, 1872.

The Singer Manufacturing Company, a corporation created under the laws of New York, transacting business in the city of Atlanta, by an agent, filed its bill against the Domestic Sewing Machine Company, a corporation created under the laws of Rhode Island, doing business in the city of Atlanta, by an agent, R. J. Wiles, the agent of said company, Alexander S. Abrams, Henry W. Grady and R. A. Alston, copartners using the firm name of the Herald Publishing Company, and W. A. Hemphill and E. Y. Clark, co-partners, under the firm name of W. A. Hemphill & Company, proprietors of the Atlanta Constitution, a newspaper published in said city of Atlanta, making the following case:

Complainant is engaged in the manufacture and sale of sewing machines. On October 14th, 1872, the Georgia State Agricultural Society held its annual fair in the county of Fulton, and invited all persons interested in sewing machines to exhibit them at said fair, under the regulations established by said society, and promised to award a diploma to the manufacturer and proprietor of the best family machine, a diploma to the manufacturer and proprietor of the best manufacturing machine, and a diploma to the manufacturer and proprietor of the machine with the best attachments, said diplomas to be determined and awarded by a committee appointed by said so-

The Singer, etc., Company *vs.* The Domestic, etc., Company *et al.*

ciety to inspect sewing machines and to award premiums. Complainant competed for each of the aforesaid diplomas. Many other machines were also presented, and amongst them the one manufactured and owned by the Domestic Sewing Machine Company. Said committee reported the machine of complainant to be the best family machine and the best manufacturing machine, and diplomas were awarded accordingly. Notwithstanding these facts the Domestic Sewing Machine Company has published in the Atlanta Herald, a newspaper owned and controlled by the Herald Publishing Company, and in the Atlanta Constitution, a newspaper owned and controlled by W. A. Hemphill & Company, that the said committee decided and reported that "the Domestic Machine, as a family machine, is the best." Complainant, for the purpose of denying such statement, published the report of the committee as it was rendered. The defendants then published that the report of the committtre as set forth by complainant was untrue, and that said committee had reported that the Domestic Machine, as a family machine, was the best. The damages to complainant resulting from the aforesaid publication are inestimable. Prayer, that the writ of injunction may issue, restraining defendants from saying by publication or otherwise that said society did not award the first premiums to complainant for the best family machine, and for the best manufacturing machine. That the writ of subpœna may issue.

The defendants answered the bill, but their defenses are unnecessary to an understanding of the decision of the Court, and are therefore omitted.

The injunction was denied, and complainant excepted.

HILLYER & BROTHER, for plaintiff in error.

L. E. BLECKLEY; S. D. McCONNELL; J. M. CLARK & SON, for defendant.

Injunction attaches only to an admitted or legally adjudged property or right in plaintiff—admitted or legally adjudged to be interfered with or infringed by defendant: Adams' Eq., 217. No property can be acquired in words, marks or devices

The Singer, etc., Company *vs.* The Domestic, etc., Company *et al.*

which indicate only the nature, kind or quality of the article in which a person deals: 2 Story's Equity Jurisprudence, 951 (*b*,) and note; High on Injunctions, 672. As to the rule in regard to trade marks, see Ellis *vs.* Zeilin & Co., 42 Georgia, 91. The report of the committee on sewing machines, at the Fair of the Georgia Agricultural Society, vested no right of property in complainant that could be infringed by defendant: 2 Story's Equity Jurisprudence, 941, (note); Adam's Equity, 217, note 1, and authorities there cited; Stokes *vs.* Landgraff, 17 Barb, 608. Equity will not restrain a publication upon the ground merely that it is false and tends to injure business of the plaintiff; nor will it interfere to prevent merely criminal or immoral acts: 2 Story's Equity Jurisprudence, 948; High on Injunctions, 23, 689; Wetmore *vs.* Scoville, 3 Edward's Chancery Reports, 529. Injunction will not be granted in doubtful or new cases not coming within well established principles: 2 Story's Equity Jurisprudence, 859 (*b*.) The Constitution of the State of Georgia grants to every citizen the right to speak or write what he pleases, he being accountable for injuries sustained by others by reason of his abuse of this privilege: Constitution of Georgia, Article I. section 9.

McCay, Judge.

A clear and definite statement of the exact thing sought for by this bill will, as it seems to us, justify the Judge in his refusal to grant the injunction. There is no complaint that the defendant is doing or publishing anything to induce the public to believe that the machine he sells is the same as the complainant's. So far as we have been able to examine them, all the trade-mark cases turn upon this: they declare that a man shall be enjoined from passing off his wares as the product of another man—from using devices to persuade the public that in buying his wares they are, in fact, buying wares guaranteed by the skill and reputation of a rival dealer: Delewan *vs.* Clark, 7 Blatch, 112; High on Injunctions, section 677. Again, this bill does not claim that the defendant is inter-

fering with the complainant's right to the exclusive use of whatever credit the report of this committee gives him. His right to publish is unlimited. Indeed, the complaint is that the defendant does *not* publish the report. The true complaint of the bill, at last, is that the defendant has denied that the society gave to complainant the premium, and has asserted that in truth the society gave it to himself. It is not said that he is passing off his wares by putting complainant's mark on them, nor that he is publishing without authority a report which the claimant is alone entitled to publish, but that he is unblushingly denying the truth of complainants having gotten the prize, and claiming that he got it himself. He is not *taking* complainant's property—he is not *infringing* the plaintiff's right of property. He is denying—it may be falsely and injuriously denying—plaintiff's right to whatever credit the premium of the society gives. Will an injunction lie to prohibit such a wrong? It is admitted there is no precedent for such an injunction in England or America. This is itself a very strong argument against it. For many years prizes, premiums and medals have been a favorite mode of publicly declaring the excellence of wares of every kind, and prize shows and contests have been an every day occurrence for a century, both here and in England. The fact that no case can be found enjoining the denial of such a reward, having been given, is a strong proof that solicitors and chancellors have not deemed such a denial a subject for injunction. The general rule is that to get an injunction you must show the infringement of a *property* right.

It is well settled that an injunction will not be granted to restrain slander or libel of title or of reputation : 6 Simmons, 297; 11 Beavan, 112; 11 Simmons, 582. Not that it is not a wrong, not that the wrong might not be irreparable, but simply because Courts of chancery, in the exercise of the extraordinary powers lodged in them, have uniformly refused to act in such a case, leaving parties to their remedy at law.

The case made by the bill is one of words, which are untrue in fact, and which are calculated to injure the credit of

complainant's business and advance the business of defendant. If a wrong capable of redress before the Courts at all, it comes more nearly within the definition of a libel or of slander concerning one's trade or business, than anything else. Equity, it must be remembered, will not enjoin every wrong. There are injuries done by one man to another which no law will remedy. Telling lies, unless those lies be of a peculiar character, is one of such injuries. But there are very many wrongs, wrongs recognizable and capable of redress at law, that yet are not such wrongs as a Court of equity will enjoin. Libel and slander, however illegal and outrageous, will not be enjoined. This is the settled rule: High on Injunctions, section 693; same, sections 23–28. The most that can be said of the conduct of the defendant is, that he is telling and publishing untruths—lies, if you will—calculated and intended to help himself and damage the complainant. To say that he may be enjoined from doing this, is to say that the writ of injunction may issue to restrain a libel or to stop slander. It is true that Courts of equity constantly refuse to lay down any absolute limitation to its power to issue this writ. But this only means that cases coming within the principles on which the Court has long acted are not beyond its power simply because the facts are novel or the injury peculiar. The principle is, that to authorize the writ there must be an irreparable, expected injury to a property right. It is a perversion of language to say that the complainant has a property right in *the truth* of the report. He has, perhaps, a right to the report, but a perversion of the truth, a claim that it is different from what it in fact is, can in no fair sense be called an infringement of his right of property in the report.

For these reasons we do not think the complainant entitled to an injunction.

Judgment affirmed.